# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **RICHARD L. STADMIRE,** | CASE NO. 3:24 CV 115 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **WARDEN KIM HENDERSON, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## INTRODUCTION

Currently pending before the Court in this 42 U.S.C. § 1983 civil rights action is Defendants Warden Kim Henderson and Interested Party State of Ohio's[1] Motion to Dismiss. (Doc. 7). Also pending are two additional related motions. *See* Doc. 8 (Plaintiff's "Motion to Amend Complaint to Exclude All Non-relevant Parties") and Doc. 12 (Defendants' Motion to Strike Docs. 10, 11, and Attached Exhibits."). Jurisdiction is proper under 28 U.S.C. § 1331. For the following reasons, the Court denies Plaintiff's Motion to Amend (Doc. 8) as moot and construes the motion as Plaintiff's opposition brief; grants Defendants' Motion to Strike (Doc. 12); and grants in part and denies in part Defendants' Motion to Dismiss (Doc. 7).

## BACKGROUND

Plaintiff, a prisoner incarcerated at the Toledo Correctional Institution, brings this case asserting civil rights claims arising from an incident on January 18, 2022. *See* Doc. 1, at 3. He

---

1. The State of Ohio indicates Plaintiff has yet to perfect service on Defendant John Barker and the John Doe Defendants. It appears as an interested party pursuant to Ohio Revised Code § 109.361 and notes that it does not waive personal service or any other defenses on behalf of the unserved Defendants.

asserts Defendant Correctional Officer Barker and Correctional Officer John Doe 1 stopped at his cell during a "round check." *Id.* He asserts Barker "went in and did a cell search" while Doe 1 stayed at the door. *Id.* at 3-4.

Upon returning to his cell, Plaintiff discovered his cell "was tore up". *Id.* at 4. He requested a "white shirt" to see the condition of his cell, but Defendants refused to call one. *Id.* Plaintiff then told the officers they were "going to have to call a Signal 14 [be]cause [he] wasn't going in" until he saw someone. *Id.* Barker told Plaintiff "again to lock-up" and Plaintiff told him "to follow the protocol and call a Signal 14." *Id.*

Barker "then tried to grab" Plaintiff's elbow and lead him in into his cell; Plaintiff pulled away, walked to his cell door, put his cup in the doorway, stood at the doorway, and stated he "wasn't going in" and not to touch him again. *Id.* Barker then pushed Plaintiff into his cell and Plaintiff "returned a punch at him". *Id.* Barker and Doe 1 "rush[ed] into Plaintiff's cell, trying to take him to the ground. *Id.* Two to three minutes later, Correctional Officers John Does #2-5 arrived and "began to punch and hit" Plaintiff with their batons. *Id.* During that time, Plaintiff and two officers "fell on the range"; Plaintiff was then handcuffed and taken to medical. *Id.*

Once at medical, he states, the nurses requested to know who the supervisor was "because they wanted to know why [Plaintiff] was hit several times on [his] head with . . . batons." *Id.* at 5. A doctor was called; he requested Plaintiff be sent to an outside hospital for an examination of his head and "because of the fact [he] was suffering from a mild concussion." *Id.* Plaintiff received three stitches in his head, surgical glue above his left eye, and other medical care. *Id.*

To his Complaint, Plaintiff attaches: (1) a Conduct Report regarding the incident authored by Defendant Barker (Doc. 1-4); (2) a Rules Infraction Board disposition finding

Plaintiff violated Rule 4 and imposing disciplinary action including restrictive housing (Doc. 1-5); (3) Plaintiff's Notice of Appeal to the Classification Committee (Doc. 1-6); (4) the Committee's determination that placement in restrictive housing was appropriate and the denial of Plaintiff's appeal (Docs. 1-7, 1-8); and (5) two Kites sent to the Warden in February and March 2022 (Docs. 1-9, 1-10).

Plaintiff seeks two million dollars for pain and suffering, two million dollars for violations of his civil rights, and two million dollars "for punitive damages or injunctive relief." *Id.* at 6.

## STANDARD OF REVIEW

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiff, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is to be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### DISCUSSION

Defendant Warden Henderson and Interested Party State of Ohio move to dismiss Plaintiff's Complaint, arguing: (1) any claims against Henderson must be dismissed because *respondeat superior* is not a basis for liability under § 1983 and Plaintiff has not alleged direct, personal involvement; (2) Plaintiff has failed to state an Eighth Amendment claim for excessive force against any Defendant; (3) the Eleventh Amendment bars Plaintiff's official capacity claims; and (4) Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims. In reply, Defendants further contend Plaintiff's claims are barred by the statute of limitations. (Doc. 9). For the reasons discussed below, the Court grants Defendants' motion as to any official capacity claims and any claims as to Defendant Henderson, but denies it as to the individual capacity claims against the individual Correctional Officers.

Motion to Amend Complaint (Doc. 8)

Following the filing of Defendants' Motion to Dismiss, Plaintiff filed a document entitled "Motion to Amend Complaint to Exclude All Non-Relevant Parties." (Doc. 8). However, nothing within the text of the document indicates it seeks amendment, and it rather contains arguments in response to Defendant's motion. *See* Doc. 8. As such, the Court denies the motion as moot and construes it as Plaintiff's opposition to the motion to dismiss.

Motion to Strike (Doc. 12).

After Defendant's reply brief was filed on June 5, 2024, Plaintiff filed a document entitled "Motion Opposing Defendant's Motion to Dismiss" on June 28, 2024. (Doc. 10). Approximately one week later, Plaintiff filed a "Motion to Amend and Add to / Motion to Oppose Defendant's Motion to Dismiss." (Doc. 11). Defendants then moved to strike both

motions and their attached exhibits (Doc. 12); Plaintiff opposed the motion to strike (Doc. 13), and Defendants replied (Doc. 14).

The Court's rules provide for a motion, opposition, and reply; no further briefing is authorized. *See* Local Civ. R. 7.1; *see also Eberhard v. Chicago Title Ins. Co.*, 2014 WL 12756822, at *2 (N.D. Ohio) ("[C]ourts agree that neither local rules . . . nor the Federal Rules of Civil Procedure authorize a non-moving party to file a sur-reply, and that to file a sur-reply the party must obtain leave of the court.") (collecting cases). Because Plaintiff did not seek leave of Court, his additional filing is not properly before the Court. And, even if the additional filing were construed as Plaintiff's first response to the motion to dismiss (rather than his "Motion to Amend Complaint", referenced above), it would be untimely. *See* Local Civ. R. 7.1(d) (requiring opposition brief to be filed within 30 days). The Court therefore grants Defendants' motion to strike Plaintiff's unauthorized and untimely filings. (Doc. 12).

Official Capacity Claims

Although Plaintiff's complaint is not clear as to whether he intends to bring his claims against Defendants in their official or individual capacities, Defendants correctly point out that they are immune from any official capacity claims.

A suit against a state official operates as an action against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, any official capacity claims are barred by sovereign immunity. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021).[2]

---

2. Defendants cite Eleventh Amendment immunity rather than sovereign immunity. The Sixth Circuit recently explained that although "courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable . . . as a matter of original meaning, the

Claims Against Warden Henderson

Defendants further move to dismiss all claims against Warden Henderson because *respondeat superior* is not a basis for liability in § 1983 actions and Plaintiff has not alleged any personal involvement by Henderson. The Court agrees.

*Respondeat superior* is not an available theory of liability under § 1983. *Polk Cnty. v. Dodson*, 102 S. Ct. 445, 453 (1981). Rather, to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ("To establish a § 1983 . . . claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." (internal quotation and citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

---

two are conceptually distinct." *WCI, Inc.*, 18 F.4th at 513. It distinguished immunity under the Eleventh Amendment as sounding in subject-matter jurisdiction and containing a diversity requirement from sovereign immunity which "refers to a state's right 'not to be amenable to the suit of an individual without its consent' ", sounds in personal jurisdiction, and does not require diversity. *Id.* at 514 (citing The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted)). Here, Plaintiff is housed in an Ohio prison and sues Ohio prison officials. Therefore "[b]ecause the parties are not diverse, sovereign immunity applies, and the Eleventh Amendment, by its plain terms, does not." *Id.*

The only factual allegation in Plaintiff's Complaint as to Henderson is that she "is the present warden" at Toledo Correctional Institution. (Doc. 1, at 3). Plaintiff has thus not pled Henderson's personal involvement in any alleged constitutional violation, and the claims against her must be dismissed.

Eighth Amendment

After the above, what remains is Plaintiff's Eighth Amendment excessive force claim against Defendants Barker and John Does 1-4. Interested Party State of Ohio moves for dismissal on the basis that Plaintiff has not adequately pled the subjective component of an Eighth Amendment claim and that the individual officers are entitled to qualified immunity because no clearly established law informed them that their actions were unconstitutional.

The defense of qualified immunity shields government officials performing discretionary functions from liability where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

However, although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to discovery," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), the Sixth Circuit has also "cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Thus, "[a]lthough an [official's] entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433-34

7

(internal marks and citations omitted). The reason for this "general preference" is that "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents [the court] from determining whether the facts of this case parallel a prior decision or not" for purposes of determining whether a right is clearly established. *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)) (Sutton, J., concurring) (brackets omitted). Nonetheless, dismissal based on qualified immunity at the pleadings stage may be appropriate under some circumstances. *See, e.g.*, *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

An inmate's post-conviction excessive force claim arises under the Eighth Amendment's cruel and unusual punishment clause. *Pelfrey v. Chambers,* 43 F.3d 1034, 1036-37 (6th Cir. 1995). To prevail on an Eighth Amendment claim, inmates "must satisfy both an objective and subjective component." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). The subjective component of an Eighth Amendment claim centers around the prison official's state of mind. *Id.* This component requires the court to consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, "a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain." *Pelfrey,* 43 F.3d at 1037 (internal quotation marks and alterations omitted).

To determine whether the use of force was "wanton and unnecessary", courts are to consider factors including the extent of injury suffered by an inmate, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

While it is beyond debate that an individual has a general right to be free from excessive force, whether a reasonable official would have understood that Defendants' actions here violated that right depends on the specific facts. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[I]f the qualified immunity questions presented are fact-intensive, the record may not be adequately developed to evaluate the defense at the pleading stage under Rule 12(b)(6)."). And the Court is mindful of the Sixth Circuit's "general preference", *Guertin*, 912 F.3d at 917, that the question of qualified immunity be resolved at the summary judgment stage, rather than the pleadings stage. *See Wesley*, 779 F.3d at 433-34.

In the light most favorable to Plaintiff, the Complaint alleges several correctional officers punched and hit him with their batons, including in the head, resulting in a mild concussion and requiring stitches on his head and surgical glue above his left eye. (Doc. 1, at 4-5). Defendants are correct that the Complaint also asserts Plaintiff was being non-compliant during the interaction and even punched a correctional officer. However, under these facts, the Court finds Plaintiff has plausibly alleged an excessive force claim sufficient to survive Defendants' motion to dismiss based on qualified immunity at this stage of the proceedings. Should the case proceed, Defendants are free to, and may well succeed on, an assertion of qualified immunity again at the summary judgment stage following a fuller development of the facts.

Statute of Limitations

In reply, Defendants contend Plaintiff's claims are barred by the applicable statute of limitations because his Complaint should not be deemed "filed" until the filing fee is paid or the litigant is granted leave to proceed *in forma pauperis*. (Doc. 9). At the outset, this argument was not raised in Defendants' original motion to dismiss and is arguably not properly before the Court. Nevertheless, even if it were properly before the Court, it would not succeed. The Sixth Circuit has held that the statute of limitations is tolled while an *in forma pauperis* request is pending. *See Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Here, the Court received Plaintiff's Complaint and Motion to Proceed *In Forma Pauperis* on January 19, 2024; Plaintiff mailed his Complaint from prison on January 17, 2024. *See* Doc. 1-10 (envelope postmarked January 17, 2024); *see also Houston v. Lack*, 487 U.S. 266, 270 (1988) (under the "prison mailbox rule", a pleading is "filed" by a pro se prisoner when it is given to a prison official for mailing).[3]

The statute of limitations remained tolled during the time Plaintiff's *in forma pauperis* application was pending, and as such, the Complaint was timely filed.

#### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant Henderson and Interested Party State of Ohio's Motion to Dismiss (Doc. 7) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein. The individual capacity claims against the individual correctional officers may proceed at this stage.

---

3. Somewhat confusingly, Defendants argue that "Plaintiff did not file his Complaint once [the IFP motion was] granted." (Doc. 9, at 2). Plaintiff was not required to re-file his Complaint after he was granted pauper status.

10

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2024